UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA RISSE<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PORTER, RIO LINDA ELVERTA RECREATION & PARK DISTRICT, FULTON-EL CAMINO RECREATION & PARK DISTRICT<br><br>Defendants. | No. 2:19-cv-00624-TLN-AC<br><br>**ORDER DENYING IN PART, GRANTING IN PART RULE 12(b)(6) MOTION TO DISMISS** |

Plaintiff Lisa Risse ("Plaintiff") brings this action against Defendants Officer Michael Porter ("Officer Porter"), Rio Linda Elverta Recreation & Park District, and Fulton – El Camino Recreation & Park District (collectively, "Defendants") asserting 16 causes of action stemming from Plaintiff's encounter with Officer Porter after a Little League game. Officer Porter is and was employed as a law enforcement officer for the Fulton-El Camino Recreation & Park District. On information and belief, Plaintiff alleges Officer Porter is and was also employed as a law enforcement officer for the Rio Linda Elverta Recreation & Park District. Plaintiff asserts the following causes of action against all Defendants:[1]

---

[1] The following causes of action are listed exactly as Plaintiff has titled them.

1

- (1) Unreasonable Force (Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983);
- (2) False Arrest/Imprisonment (Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983);
- (3) Unreasonable Search and Seizure (Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983);
- (4) Negligence (Common Law; Cal. Gov. Code §§ 815.2(a), 820(a));
- (5) Assault/Battery (Cal. Gov. Code §§ 815.2(a), 820(a));
- (6) Unreasonable Search and Seizure (Article I, § 13 of the California Constitution; Cal. Gov. Code §§ 815.2(a), 820(a));
- (7) Failure to Discharge Mandatory Duty (Cal. Gov. Code § 815.6; Cal. Code Civ. Proc. § 1060);
- (8) Intentional and Negligent Infliction of Emotional Distress (Common Law; Cal. Gov. Code §§ 815.2(a), 820(a));
- (9) Defamation (Common Law; Cal. Civil Code §§ 44, 45);
- (10) False Arrest/Imprisonment (Article I, § 13 of the California Constitution; Cal. Gov. Code §§ 815.2(a), 820(a); Common Law);
- (11) Unreasonable Force (Article I, § 13 of the California Constitution, Cal. Gov. Code §§ 815.2(a), 820(a));
- (12) Right of Familial Association, Companionship, and Society (Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983);
- (13) Right of Association, Companionship, and Society (First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983);
- (14) Violation of Civil Rights (42 U.S.C. § 1983; Fourth, Eighth, and Fourteenth Amendments);
- (15) Violation of United States Constitution (United States Constitution, Amendment 4 § 1);
- (16) Bane Act (Cal. Civ. Code § 52.1(b); Cal. Gov. Code §§ 815.2(a), 820(a)).

Presently before the Court is Defendants' Motion to Dismiss, seeking to dismiss Claim

Nos. 1, 2, 3, 6, 8, 10, 11, 12, 13, 14, and 15, as discussed below. For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The First Amended Complaint ("FAC") alleges that at approximately 10:00 p.m. on April 13, 2018, Plaintiff made her way to her vehicle after watching her son's Little League game at Westside Park in Sacramento, California. (ECF No. 10 at ¶ 13.) As she approached her vehicle, Plaintiff began to greet Officer Porter, who was behind her vehicle. (*Id.* at ¶ 14.) Officer Porter directed his squad car's spotlight at Plaintiff's face and shouted demands to see her identification. (*Id.*) Because the light was bright and obstructed her vision, making it difficult to produce the requested identification, Plaintiff opened and placed her purse on the back of her vehicle. (*Id.* at ¶¶ 15–16.) She then stepped away from the vehicle with her hands up and to the side. (*Id.* at ¶ 16.)

Plaintiff claims she identified herself as a probation officer, informed Officer Porter that she carried a firearm in her purse, and told him that her permit to carry along with her identification were in her purse. (*Id.* at ¶ 17.) She also told Officer Porter where in her purse the firearm was located. (*Id.* at ¶¶ 17, 21.) Plaintiff asserts that upon this information, Officer Porter assumed a shooter's stance, raised his pistol, and shouted, "Gun! You have a gun!" (*Id.* at ¶ 18.) This interaction caused Plaintiff's eight-year-old daughter to begin screaming and crying. (*Id.*) During this time, Officer Porter shouted "confusing and conflicting instructions, requesting Plaintiff to back away from her purse, keep her hands up, hand him her purse, and hand him her firearm." (*Id.* at ¶ 19.) Plaintiff asserts she was fearful Officer Porter would shoot and kill her if she approached the purse, and that she attempted to explain to Officer Porter that the firearm was located in a secure zipper in her purse. (*Id.* at ¶ 22.) Plaintiff alleges she was "certain that Michael Porter was about to shoot and kill Plaintiff in front of Plaintiff's daughter based on his behavior" and that she was "in mortal fear of her life." (*Id.* at ¶ 23.)

Plaintiff asserts that when Officer Porter "aggressively rushed and handcuffed" Plaintiff, her daughter began "fearfully begging" for Officer Porter to "not kill her mom," to which Officer Porter responded, "shut the f*** up!" (*Id.* at ¶ 24.) Plaintiff asserts that upon arriving at the

scene, Plaintiff's thirteen-year-old son approached the vehicle and told Officer Porter, "get off my mom," at which point Officer Porter aimed his firearm at Plaintiff's son. (*Id*. at ¶¶ 25–26.) Plaintiff's husband, son, and daughter "begged Michael Porter to not harm or kill Plaintiff." (*Id*. at ¶ 28.) The FAC asserts Officer Porter continued to shout expletives at Plaintiff's children and "other surrounding community members while positioning himself in a threatening manner, holding his service weapon as if he were ready to aim and fire it." (*Id*. at ¶ 29.)

According to the FAC, Officer Porter then reported a "'woman with a gun and aggressive male threatening people at the little league game' into his radio and requested another officer." (*Id*. at ¶ 28.) A California Highway Patrol ("CHP") Officer and Sacramento County Sheriff's Deputy responded to the call. (*Id*. at ¶ 34.) Later, those officers allegedly stated Officer Porter's call was misleading and Officer Porter's behavior was "grossly inappropriate." (*Id*. at ¶¶ 28, 34.)

Plaintiff additionally alleges that Officer Porter put Plaintiff into the backseat of a locked police vehicle with the windows rolled up, detaining her there for more than an hour without proper ventilation. (*Id*. at ¶ 30.) Plaintiff alleges she was unable to remove her winter clothing, became overheated, nauseated, and nearly lost consciousness. (*Id*. at ¶ 30.) Officer Porter allegedly refused Plaintiff's requests for water, dismissed her complaints that exhaust from the floorboard was suffocating her, and kept her locked in the vehicle. (*Id*. at ¶¶ 30, 33.) Within 20 to 30 minutes of being locked in the car, Plaintiff vomited on herself. (*Id*. at ¶ 32.)

According to the FAC, a responding Sergeant was present during her requests for water and ventilation.[2] (*Id*. at ¶ 31.) Additionally, the CHP Officer and Sherriff's Deputy present at the scene directed Officer Porter and the Sergeant to release Plaintiff, but they refused. (*Id*. at ¶ 35.) Officer Porter released Plaintiff after more than an hour with a citation for resisting arrest. (*Id*. at ¶ 36.) Plaintiff has not been charged with any crime arising from the incident. (*Id*. at ¶ 36.)

The following week, Officer Porter allegedly contacted the Rio Linda Little League office and recommended Plaintiff be banned because her family was "dangerous." (*Id*. at ¶ 37.) Officer Porter also contacted Plaintiff's place of employment, telling her co-workers she was aggressive

---

[2] It is not entirely clear when the Sergeant arrived on the scene. It appears from the FAC that the Sergeant was not present for the initial interaction between Plaintiff and Officer Porter but arrived before the responding CHP Officer and Sherriff's Deputy.

4

and had resisted arrest. (*Id*. at ¶ 38.) The FAC alleges Officer Porter contacted Plaintiff's place of employment several times and continued to make "unlawful, unfounded, and derogatory remarks about Plaintiff's character to [her] coworkers." (*Id*. at ¶ 38.) Plaintiff asserts Officer Porter continues to harass Plaintiff and her husband in public while in the presence of family and friends; spread rumors about Plaintiff being "dangerous" and "a liar"; stalk Plaintiff; and repeatedly defame Plaintiff "in communications with her place of employment and with members of the Rio Linda community." (*Id*. at ¶ 39–40.)

Plaintiff alleges she suffers from anxiety and severe emotional distress. She is being treated for the severe psychological and emotional injuries resulting from the alleged acts and omissions of Officer Porter and Defendants. (*Id*. at ¶¶ 41–42.) Due to public humiliation and continued defamation by Officer Porter, Plaintiff claims she had to take an extended leave of absence from her work, and her professional and personal relationships have suffered. (*Id*. at ¶¶ 43, 45.) Plaintiff continues to experience a "loss of quality of life and a loss of quality of relationship, companionship and society." (*Id*. at ¶ 44.) Plaintiff's familial relationships have been harmed and she has suffered mental health ramifications from both the initial incident and Officer Porter's continued stalking and harassment. (*Id*. at ¶ 45.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

(9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III. ANALYSIS**

    A. <u>Claim Nos. 1–3 and 12–15 to the Extent They are Alleged Against Municipal Defendants</u>

Claim Nos. 1 through 3 and 12 through 15 assert causes of action under 42 U.S.C. § 1983. In order to successfully state a claim under § 1983 against a municipality, as opposed to an individual state actor, a plaintiff must allege an officer violated her constitutional rights by executing a local government policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658, 690–91 (1978). Defendants argue Plaintiff has merely made a "conclusory *Monell* pleading," and further that Plaintiff has alleged only "a single incident" of unconstitutional conduct as the basis for her *Monell* claim. (ECF No. 13 at 8–9.) Plaintiff argues that she has properly alleged a *Monell* claim on various theories of liability. Specifically, Plaintiff asserts Defendants made a conscious choice not to properly train Officer Porter and that they condoned his continued harassment of Plaintiff in violation of her constitutional rights. (ECF No. 17 at 8.) Plaintiff further alleges these customs or practices were the cause of the harm inflicted on her. (ECF No. 17 at 7–8.) In their Reply to Plaintiff's Opposition, Defendants attempt to bifurcate the incident involving the arrest and the continued actions of Officer Porter, asserting none of these subsequent actions involved unconstitutional conduct. (ECF No. 19 at 2.)

In asserting a *Monell* claim, Plaintiff is not required to meet a heightened pleading standard for the purposes of demonstrating municipal liability. *See Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167–68 (1993); *see also Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005). A municipality may

7

be liable under *Monell* for adopting a policy or custom that inflicts injury; failing to train employees properly to the extent of "deliberate indifference" to a constitutional right; or ratifying a subordinate's unconstitutional behavior. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018); *see also McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (holding where prison guards performed impermissible "shakedown search," failure by prison officials to discipline the guards or admit their conduct was unlawful could be construed a municipal policy).

Here, Plaintiff has alleged sufficient facts to withstand a Rule 12(b)(6) motion as to her *Monell* claims against Defendants Fulton-El Camino Recreation and Park District and the Rio Linda Elverta Recreation and Park District. First, Plaintiff alleges inadequate training, supervision, or discipline. (*See generally* ECF No. 10.) To sufficiently state such a claim, Plaintiff must allege: (1) the training program was inadequate "in relation to the tasks the particular officer[] must perform"; (2) the municipal officials must have been deliberately indifferent "to the rights of persons with whom the [local officials] come into contact"; and (3) the inadequacy of the training was shown to have actually caused the constitutional deprivation. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal quotation marks omitted). Put succinctly, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citation omitted).

If taken as true and read in the light most favorable to Plaintiff, the allegations of the FAC sufficiently allege a failure to train that rises to the level of deliberate indifference by the municipality. Specifically, the FAC asserts that a CHP Officer and a Sacramento County Sheriff's Deputy stated the call Officer Porter made was misleading and his behavior was grossly inappropriate. (ECF No. 10 at 6.) The fact that two officers from different law enforcement branches each stated Officer Porter was not behaving within the bounds of standard procedure makes it plausible Officer Porter was not properly trained. Because this seems to be an otherwise ordinary encounter with a citizen, such inadequate training would amount to deliberate indifference to the rights of the ordinary citizens officers contact on a daily basis.

8

Further, a Sergeant from Officer Porter's department was present for at least part of the incident and, as alleged, did nothing to stop Officer Porter's conduct, nor did he release Plaintiff from the patrol car. (ECF No. 10 at 5–6.) Indeed, according to the FAC the Sergeant consulted Plaintiff as to where her firearm was located and was present during her complaints about the exhaust and heat, requests for water, and subsequent vomiting due to those conditions. (*Id*.) Construing these facts in Plaintiff's favor, they indicate Officer Porter and the Sergeant may have believed they were within their rights to continue to detain Plaintiff. (*Id.*) This further makes plausible the position that the municipalities offered a training program so inadequate that it amounts to deliberate indifference.

Moreover, ratification by supervisors of a subordinate's conduct can serve as a "policy" for purposes of municipal liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "[T]he mere failure to investigate the basis of a subordinate's discretionary decisions[,]" is not considered a ratification. *Id*. at 130. But even a policy of inaction may be considered a policy for purposes of *Monell* liability. *See Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016); *Waggy v. Spokane Cty. Wash*., 594 F.3d 707, 713 (9th Cir. 2010).

Here, Plaintiff alleges Defendants customarily allowed officers to behave as Officer Porter is alleged to have behaved because they knew of and condoned the behavior through inaction. (ECF No. 10 at 25.) More specifically, the presence of a Sergeant, who failed to discipline Officer Porter or at a minimum correct the ongoing situation, coupled with the fact that Defendants allegedly condoned Officer Porter's continued harassment and violation of Plaintiff's rights could indicate a ratification of Officer Porter's conduct. Plaintiff has alleged continued misconduct by Officer Porter, and Defendants have not indicated the municipality has taken any disciplinary action against Officer Porter for his continued harassment of Plaintiff. This at least suggests the municipality has ratified this behavior, allowing for the inference that a custom or policy exists that permits such conduct. Consequently, Plaintiff has alleged sufficient facts to make plausible a *Monell* claim against Defendants, and Defendants' Motion to Dismiss Claim Nos. 1–3 and 12–15 as to the municipal Defendants is DENIED.

///

B. <u>Claim Nos. 1–3 and 12–14 to the Extent They Allege Violations of the Fourteenth Amendment</u>

With regard to the same causes of action, Defendants contend Plaintiff does not state a Fourteenth Amendment claim, arguing there is no legal basis for Plaintiff's Fourteenth Amendment claims and her claims should be analyzed solely under the Fourth Amendment. (ECF No. 13 at 10–11.) Plaintiff asserts the reference to the Fourteenth Amendment is proper because "the Fourth Amendment applies to state and local entities by virtue of its incorporation through the Fourteenth Amendment's Due Process Clause." (ECF No. 17 at 8.)

Plaintiff has the better argument. Indeed, courts have found that the Fourteenth Amendment may be used as a conduit for the Fourth Amendment. *Neylon v. County of Inyo*, 1:16-CV-0712 AWI JLT, 2016 WL 6834097, at *8 (E.D. Cal. Nov. 21, 2016); *Holcomb v. Ramar*, 1:13-CV-1102 AWI SKO, 2013 WL 5947621 (E.D. Cal. Nov. 1, 2013). As a result, although a plaintiff may not be seeking to recover under a Fourteenth Amendment due process theory, references to the Fourteenth Amendment in terms of excessive force and false arrest claims is appropriate. *Id.* Plaintiff's Opposition clarifies that his reference to the Fourteenth Amendment in claims 1 through 3 is a conduit for the Fourth Amendment, and therefore it need not be dismissed. *See id.*

In addition, to the extent Defendants move to dismiss all claims brought under the Fourteenth Amendment, Plaintiff asserts she was detained for over an hour in the backseat of a police vehicle with the windows rolled up and doors locked without proper ventilation. (ECF No. 10 at 5–6.) She repeatedly asked for water and ventilation. (*Id.*) She was handcuffed, wearing winter clothing, and the car was hot. (*Id.*) Plaintiff alleges she was humiliated when she vomited on herself due to the heat and the exhaust fumes from the running vehicle. (*Id.*) Plaintiff alleges a loss of quality of life, relationship, companionship, and society due to the initial incident and continuing harassment. (*Id.* at 7.) Plaintiff alleges her familial relations and emotional and mental health have been harmed due to the initial incident and continuing harassment. (*Id.* at 7:19–21.) All of these alleged facts are sufficient to state a cognizable claim under the Fourteenth Amendment. Defendants' Motion to Dismiss Claim Nos. 1–3 and 12–14 to the extent that they

allege violations of the Fourteenth Amendment is therefore DENIED.

## C. Claim No. 13 to the Extent it Alleges a First Amendment Claim

Defendants argue Plaintiff has not adequately demonstrated a First Amendment violation because she did not "provide evidence showing that by his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct." (ECF No. 13 at 11.)  Plaintiff reasserts that her claim is not based on restriction of political speech, but rather her First Amendment claim focuses on the deprivation of her right to familial association, companionship, and society.  (ECF No. 17 at 9.)  In reply, Defendants only argue that Plaintiff's brief detention does not rise to the level of a First Amendment deprivation of familial association.

In *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001), the Ninth Circuit held that "family relationships, that presuppose deep attachment and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life" is protected under the First Amendment.  Plaintiff alleges that subsequent to the initial incident, Officer Porter continued to harass Plaintiff, telling the Little League to ban her because she and her family are "dangerous"; calling Plaintiff's place of employment and defaming Plaintiff to her coworkers; spreading rumors in the community that Plaintiff is "dangerous" and "a liar"; and continuing to stalk and harass Plaintiff in public while in the presence of her family and friends.  (ECF No. 10 at 6–7.)  Plaintiff alleges she took an extended leave of absence from work as a result of the "defamation, harassment, and attempts to publicly humiliate" her.  (*Id*. at 7:9–15.)  Plaintiff alleges that as a result of Defendants' actions, inactions, or deliberate indifference to her rights, her working associations have been restricted and affected, causing loss of quality of life, relationship, companionship, and society.  (*Id*. at 7:9–18.)

The Court agrees with Defendants that Plaintiff's brief detention likely does not amount to a violation of the First Amendment.  (*See* ECF No. 19 at 4.)  The alleged subsequent intimidation and harassment by Officer Porter, however, condoned by the municipal Defendants, could plausibly be construed as an unconstitutional restraint of free association because it has had the

effect of alienating Plaintiff from her family, friends, and co-workers. Defendants attempt to gloss over Plaintiff's claims by minimizing this extensive harassment as "loosely related post-incident harassment and gossip." (ECF No. 19 at 3.) But Officer Porter's behavior coupled with the municipal Defendants' inaction or indifference amounts to more than "loosely related post-incident harassment and gossip." Officer Porter allegedly continues to harass Plaintiff and make false claims related to the incident. The Court therefore finds Plaintiff has alleged sufficient facts to support a violation of her First Amendment rights and Defendants' Motion is DENIED to the extent it seeks to dismiss her First Amendment claim.

### D. Claim No. 14 to the Extent That it Alleges a Violation of the Eighth Amendment

Defendants next move to dismiss Claim No. 14 to the extent it alleges a violation of the Eighth Amendment because Plaintiff has not been convicted of a crime and was not detained in prison. (ECF No. 13 at 11.) Plaintiff does not oppose the dismissal of her Eighth Amendment claim. (ECF No. 17 at 10.)

A cognizable Eighth Amendment claim requires allegations of a criminal conviction. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Plaintiff was not convicted of any crime and does not oppose dismissal of her Eighth Amendment claim. Consequently, Defendants' Motion to Dismiss Claim No. 14, to the extent that it alleges an Eighth Amendment violation, is GRANTED without leave to amend. Plaintiff's other claims within Claim No. 14 are unaffected by this ruling.

### E. Claim No. 15 for Violation of the Fourth Amendment to the Extent it is Duplicative of Claim Nos. 1–3

Defendants argue Plaintiff's Claim No. 15 for violation of the Fourth Amendment is duplicative of Claim Nos. 1–3 and is therefore unnecessary and improper. (ECF No. 13 at 12.) Plaintiff contends she has "multiple theories of liability that flow from the Fourth Amendment" and "though they have similar components, each charge is unique and separate." (ECF No. 17 at 10.)

///

The Court finds Plaintiff's Claim No. 15 is duplicative of claims 1-3 as there are no new facts alleged to differentiate this claim. While Plaintiff is entitled to state as many separate claims as she has and may also plead alternate or inconsistent grounds for relief, this claim alleges no new facts and fails to allege alternate grounds for relief. Defendants' Motion to Dismiss Claim No. 15 is GRANTED without leave to amend.

### F. Claim No. 8 as to Negligent Infliction of Emotional Distress and Severe Emotional Distress.

In their Motion to Dismiss, Defendants argue a claim for Negligent Infliction of Emotional Distress ("NIED") cannot stand as an independent claim from Plaintiff's Claim No. 4, alleging negligence, and further argue Plaintiff has not sufficiently alleged "severe or extreme" emotional distress as required for NIED or Intentional Infliction of Emotional Distress ("IIED"). (ECF No. 13 at 12.) Plaintiff does not contest the duplicative nature of her NIED claim but argues she has stated a sufficient claim of IIED. (ECF No. 17 at 11–12.) More specifically, Plaintiff asserts Officer Porter's behavior was "extreme and outrageous … with the intention of causing, or reckless disregard of the probability of causing, emotional distress, … [P]laintiff[] suffer[ed] severe or extreme emotional distress, and actual and proximate causation of the emotional distress" was the extreme or outrageous conduct of Officer Porter and Defendants. (ECF No. 17 at 11.) Plaintiff further argues she has met the threshold for claiming severe emotional distress because she has suffered and continues to suffer from depression, anxiety, and post-traumatic stress disorder that is being treated by a mental health professional. (ECF No. 17 at 11.) Defendants argue in their Reply that Plaintiff's claims are not sufficient to state an independent claim for emotional distress and her allegations are "conclusory." (ECF No. 19 at 5.)

The Court agrees that the claim of NIED is duplicative of Claim No. 4, alleging negligence. "The negligent causing of emotional distress is not an independent tort, but the tort of negligence; the traditional elements of duty, breach of duty, causation, and damages apply." *San Joaquin Deputy Sheriffs' Ass'n v. Cty. of San Joaquin*, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012), *citing Burgess v. Superior Ct.*, 2 Cal. 4th 1064, 1072 (1992). Plaintiff has claimed

13

negligence in Claim No. 4, and thus Defendants' Motion to Dismiss as to the portion of Claim No. 8 alleging NIED is GRANTED without leave to amend.

With respect to dismissal of Plaintiff's IIED claim, however, the Court finds Plaintiff has sufficiently stated a cause of action. To qualify as severe emotional distress, the "distress must be so severe that no reasonable [person] in a civilized society should be expected to endure it." *San Joaquin*, 898 F.Supp.2d at 1192 (internal quotations omitted). Emotional distress qualifies as severe and traumatic when manifesting as shock, horror, nausea, or another physical affect. *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970).

Plaintiff alleges Officer Porter pointed his service weapon at Plaintiff and her 13-year old son and told Plaintiff's 8-year old daughter to "shut the f*** up!" (ECF No. 10 at 4–5.) Plaintiff alleges she was in fear for her life and her family's safety as Officer Porter threatened to harm them. (*Id*. at 5.) Plaintiff alleges she was handcuffed with her winter clothing on, detained for over an hour in a hot police vehicle, without proper ventilation, and in front of members of her community, and that she became physically ill, all while her pleas for water and ventilation were ignored. (*Id*. at 5–6.) Plaintiff states she not only suffers from anxiety and severe emotional distress due to Officer Porter's behavior but is also being treated for severe psychological and emotional injuries, including post-traumatic stress disorder, stemming from Officer Porter's behavior. (*Id*. at 7.) Further, Plaintiff alleges she took an extended leave of absence from work as a result of the "defamation, harassment, and attempts to publicly humiliate her." (*Id*.) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, Plaintiff sufficiently alleges distress "so severe that no reasonable [person] in a civilized society should be expected to endure it." *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1193 (E.D. Cal. 2011). Defendants' Motion to Dismiss Claim No. 8 as to IIED is therefore DENIED.

### G. Claim Nos. 6, 10, and 11 Alleging Violations of the California Constitution

Defendants argue Claim Nos. 6, 10, and 11 should be dismissed because Article I, Section 13 of the California Constitution does not confer a private right of action. (ECF No. 13 at 14.) Plaintiff argues that because the language in Article I, § 13 "parallels" protections afforded by the Fourth Amendment of the U.S. Constitution, and there was no probable cause to arrest Plaintiff,

her claim should be allowed to progress. (ECF No. 17 at 12–13.)

"Section 13 of Article I of the California Constitution does not confer a private right of action for damages." *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1020–21 (S.D. Cal. 2018). Further, California Government Code §§ 815.2(a) and 820(a) do not create a substantive right of action that can stand alone. *Hearns v. Gonzales*, 2018 WL 1790800, at *2 (E.D. Cal. April 16, 2018). The Motion is therefore GRANTED as to Claim Nos. 6, 10, and 11 without leave to amend.

### IV. Conclusion

1) Defendants' Motion to Dismiss Claim Nos. 1–3 and 12–15 to the extent they assert a *Monell* claim against the municipal Defendants is DENIED.
2) Defendants' Motion to Dismiss Claims 1–3 and 12–14 to the extent they assert a Fourteenth Amendment Claim is DENIED.
3) Defendants' Motion to Dismiss Claim 13 to the extent it asserts a First Amendment Claim is DENIED.
4) Defendants' Motion to Dismiss Claim 14 to the extent it asserts an Eighth Amendment claim is GRANTED without leave to amend only as to the Eighth Amendment claim, leaving intact the § 1983, Fourth Amendment, and Fourteenth Amendment claims.
5) Defendants' Motion to Dismiss Claim No. 15 is GRANTED without leave to amend.
6) Defendants' Motion to Dismiss Claim No. 8 is GRANTED without leave to amend only as to the NIED claim, and DENIED as to the IIED claim.
7) Defendants' Motion to Dismiss Claim Nos. 6, 10, and 11 is GRANTED without leave to amend.

///
///
///
///
///
///

Within 21 days from the date of electronic filing of this Order, Plaintiff shall file an amended complaint reflecting the Court's ruling above. Plaintiff is not permitted by this Order to make any new assertions of fact or law, or to amend her claims outside the scope of this Order. The amended complaint shall serve only to create a clear operative complaint. Defendants shall answer or otherwise respond to the amended complaint in compliance with the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: March 23, 2020

_____
Troy L. Nunley
United States District Judge